IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARYNELDA RAMIREZ-MUÑOZ

     Plaintiff,

        v.                        CIVIL NO. 13-1955 (PG)

Wyndham Grand Rio Mar Beach Resort
and Spa,

     Defendant.

## OPINION AND ORDER

Plaintiff Marynelda Ramirez-Muñoz (hereinafter "Plaintiff" or "Ramirez") filed this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), against her employer Wyndham Grand Rio Mar Beach Resort and Spa ("Defendant" or "the Hotel"), alleging discrimination and harassment on the basis of age, as well as retaliation for engaging in protected conduct. See Docket No. 1. Specifically, Ramirez claims she suffered several adverse employment actions, including a hostile work environment, because of her age and in retaliation for opposing the Hotel's unlawful employment practices. See id. Ramirez also pleads supplemental state law claims for age discrimination and retaliation under Puerto Rico's anti-discrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. Laws Ann. tit. 29, § 146 et seq., and Law No. 115 of December 20, 1991, P.R. Laws Ann. tit. 29, § 194 et seq.

Before the Court is the Defendant's Motion for Summary Judgment (Docket No. 17), Plaintiff's Opposition (Docket No. 25), and the Defendant's Reply (Docket No. 29). After a close examination of all of the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS** the Defendant's Motion for Summary Judgment for the reasons explained below.

## I.   SUMMARY JUDGMENT STANDARD

A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which allows disposition of a case if "the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

To be successful in its attempt, the moving party must demonstrate an absence of evidence support the non-moving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue that is both genuine and material. See Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576 (1st Cir. 1994)(citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990))(internal quotation marks omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir. 2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## II.   FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must address several compliance issues presented to the Court when reviewing the Plaintiff's opposition papers.

Local Rule 56 governs the parties' submissions of summary judgment materials. See L.Cv.R. 56 (D.P.R. 2009). With respect to the opposing statement of material facts, Local Rule 56(c) states as follows:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts. Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.[1]

L.Cv.R. 56(c).

"This separate section containing additional facts is necessary to allow the moving party to reply to those additional facts and to allow the court to easily determine the disputed facts. Therefore, a party may not include numerous additional facts within its opposition to the moving party's statements of uncontested facts." Malave-Torres v. Cusido, 919 F.Supp.2d 198, 207 (D.P.R. 2013)(internal citations omitted). The First Circuit has repeatedly held that litigants that ignore the provisions of Local Rule 56 do so "at their peril". See Mariani-Colon v. Department of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007)(citations and internal quotation marks omitted); Rivera Ruiz v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

A careful review of the Plaintiff's opposition papers, see Docket No. 25-1, reveals that the Plaintiff failed to comply with the provisions of Local Rule 56(c). At the outset, the Court notes that the Plaintiff did not deny any of the Defendant's proposed statement of uncontested facts ("SUF"). Instead, the Plaintiff admitted most of the Defendant's proposed statements and qualified the rest. However, the Plaintiff's responses and objections to the Defendant's proposed facts include many assertions that lack evidentiary support or record citations. In addition, the Plaintiff failed to include a separate section of additional facts, instead proposing her own version in the same numbered

---

[1] Local Rule 56(e) further states that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." L.Cv.R. 56(e).

paragraphs where she qualified the Defendant's. See Docket No. 25-1 at ¶¶ 46, 47, 56, 61, 72, 76 and 77. Given that the Court is not required to "sift through Plaintiff's responses to locate additional facts," Malave-Torres, 919 F.Supp.2d at 207, the Court will disregard any additional facts provided by the Plaintiff in qualifying the Defendant's that are unsupported by the evidence on record or otherwise fail to comply with the provisions of Local Rule 56(c).[2] See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 137 (1st Cir. 2012).

Based on the foregoing, the Court found the following material facts were undisputed:

### *Employment Background*

1. Defendant is a company engaged in doing business in Puerto Rico with over fifty (50) employees.

2. Plaintiff Ramirez was born on May 9, 1957. She has been employed by the Hotel since December of 2004, as a PBX overnight Operator. See Docket No. 17-1, Defendant's Statement of Uncontested Facts ("SUF") at ¶¶ 1-3. Her responsibilities include answering the Hotel's incoming internal and external phone calls and scheduling and making wake-up calls to the Hotel's guests. Id. at ¶ 7.

3. There are approximately eight (8) PBX Operators at the Hotel, and at least half of them are over 50 years old. Id. at ¶¶ 6, 68.

4. At all times relevant herein, the Hotel has maintained an anti-discrimination policy, which prohibits discrimination on account of age and other protected classifications, harassment and retaliation in the workplace. Id. at ¶ 8. The policy includes a procedure for employees to bring forth any claims of discrimination, harassment and retaliation. Id.

5. Among the other employment policies are the attendance policy, a vacation policy, and Wyndham's Standards of Conduct, all of which are included in the Employee Handbook (the "Handbook"). See id. at ¶¶ 10-12.

6. As part of her employment with the Hotel, Plaintiff received and became familiar with the Handbook and the policies set forth therein. Id. at ¶¶ 9, 13-14.

---

[2] To the extent that the Defendant did not file a reply statement of material facts, the Court also deems admitted all of the factual assertions properly supported by Plaintiff in her opposing statement facts.

7. On November of 2102, Helen Delgado ("Delgado") became Plaintiff's supervisor. Id. at ¶ 18. However, due to their different schedules, Plaintiff and Delgado only see each other approximately three to four times a month and communicate mostly via e-mail or phone. Id. at ¶¶ 33-35.

8. Admittedly, Plaintiff works mostly under the supervision of the Hotel's Overnight Manager, Jose Diaz ("Diaz"). Id. at ¶ 32.

### *Vacation Requests*

9. Pursuant to the Hotel's vacation policy, employees must submit their vacation requests in advance and have prior written approval by the department head. Id. at ¶ 12.

10. Plaintiff disagrees with the vacation policy as she believes that a request made two weeks in advance gives her employer reasonable anticipation. Id. at ¶¶ 28-29.

11. In October of 2012, Plaintiff selected December 31st as one of a total of three vacation days that employees could choose from for the month of December. Id. at ¶ 17.

12. At some point before December 31st, Plaintiff was informed that she was scheduled to work on said date, despite having selected the same as a day off. Id. at ¶ 19.

13. In the following days, Delgado called Plaintiff and told her that she would try to amend the schedule to grant her December 31st off.[3] Id. at ¶ 22. Plaintiff argued that it was not a favor, but a "right" that she had. Id. at ¶ 23.

14. Plaintiff admits that she was not nice during this conversation, but that eventually she was granted December 31st as a vacation day. Id. at ¶¶ 26-27.

15. On April 4, 2013, Delgado called Plaintiff to inform her that the air conditioning system would be shut down during her overnight shift due to certain repairs being conducted by the Hotel's engineering department. Id. at ¶ 36.

16. On this occasion, Plaintiff requested several vacation days in May of 2013. Id. at ¶ 36. However, because other PBX operators had already requested her desired dates, Delgado told her that they would need to

---

[3] At that time, Plaintiff and Delgado had not yet met. Id. at ¶ 21.

discuss the situation further. Plaintiff argued that she had barely asked for vacation days, and that she had been reporting to work despite her strong back pain and while taking heavy medication. Delgado then offered Plaintiff time off from work to rest, but Plaintiff refused. Id. at ¶ 36.

### First meeting with Human Resources

17. Also on April 4, 2013, Plaintiff met with the Hotel's Human Resources ("HR") Manager, Jessica Gomez ("Gomez"), to complain about Delgado. Specifically, Plaintiff complained about receiving work-related phone calls from her supervisor during off-duty hours, Delgado's tone of voice (which she though was "inadequate"), and the fact that her request for vacation days in May of 2013 had not been immediately approved. Id. at ¶ 38.

18. Plaintiff did not complain of any type of discrimination or harassment on Delgado's part during her meeting with Gomez. Id. at ¶ 41.

19. On that same date, Gomez prepared a written summary of the meeting, which Plaintiff considers to be an accurate description of their conversation. Id. at ¶ 39. The document does not mention any concern or complaint regarding discriminatory or harassing conduct or practice on the basis of age by Delgado. See Docket No. 17-9.

20. Upon Plaintiff's request, Gomez met with Delgado on April 12, 2013, to discuss Plaintiff's complaint regarding the work-related phone calls. Delgado explained that she had called Plaintiff several times to inform her of work-related changes and/or circumstances that could affect her shift, but that she would no longer do so unless necessary. See Docket No. 17-1 at ¶ 43.

21. Plaintiff admits that HR took prompt action in managing her concerns and that as a result thereof, she stopped receiving work-related calls from Delgado. Id. at ¶ 44-45.

22. Also during this meeting, Delgado told Gomez that she had scheduled several department meetings which Plaintiff had failed to attend.[4] Id. at ¶ 77. Plaintiff has only attended two or three of the monthly department meetings, and has never been reprimanded for those

---

[4] Because Plaintiff qualifies Defendant's SUF at ¶ 77 with pure argument, the Court deems the same as uncontested.

meetings she has missed. Docket No. 17-3 at p.92.

23. Finally, Gomez and Delgado discussed Plaintiff's request for vacation days in May of 2013. Id. at ¶ 43. Admittedly, Delgado never granted nor denied the request, as Plaintiff was on a leave of absence from the end of April until May 26, 2013. Id. at ¶ 46.

### *Suspension and First Final Warning*

24. On April 5, 2013, at approximately 3:30am, the Manager on Duty, Zandra Segarra ("Segarra"), and a Hotel shuttle driver went to the Front Desk where Plaintiff works, to verify whether a missing guest who was scheduled to depart had received a wakeup call. Segarra noticed Ramirez was sleeping, or with her eyes closed, and called her name several times before Plaintiff responded.[5] Docket No. 17-1 at ¶ 56.

25. Segarra asked Plaintiff to make a live call and tell the guest that the shuttle would soon leave. Plaintiff admittedly dialed the incorrect room number and called the wrong guest, for which she had to apologize. Id.

26. Segarra documented the incident and informed the same to other Hotel managers and Plaintiff's supervisor, Delgado. Docket No. 17-11. Thereafter, Plaintiff was suspended from her employment from April 10 to April 12, 2013, pending investigation of her reported misconduct. Docket 17-1 at ¶ 59.

27. Upon returning to work, Plaintiff received a "Final Warning" (hereinafter, the "first final warning") for her reported violations of the Hotel's policies and Standards of Conduct. Id. at ¶ 60. The disciplinary action was signed by Delgado, but based on the information provided by Segarra of the incident. See Docket No. 17-3

---

[5] Plaintiff attempts to qualify SUF at ¶ 56 by stating that:

...the warning issued by Segarra to Ramírez was due to false reasons since Ramírez was never caught sleeping in the job, nevertheless, in order not to be repetitive, please refer to plaintiff's response to ¶ 46. In addition, the plaintiff prepared a written statement on April 20, 2013, in response to the warning issued by Segarra which she denied the statements made by Segarra.

Docket No. 25-1 at ¶ 56.

Plaintiff's response to SUF ¶ 56, which incorporates by reference a previous and unrelated response, fails to squarely address, and therefore, qualify the facts proposed by the Defendant. The remaining portion of her response is not supported with any record citation. Thus, SUF at ¶ 56 is deemed uncontested.

at p. 37.

28. Although Plaintiff claimed she was awake and working at all times during her April 5th shift, she decided not to contest Segarra's statement out of respect for her. Docket 17-1 at ¶ 57.

29. Pursuant to the Hotel's Employee Handbook, taking time off during the regularly scheduled workday without authorization, sleeping during the scheduled workday, and failure to provide courteous and efficient guest service or failure to satisfactorily perform work or job assignments, are considered violations to the Hotel's Standards of Conduct which may result in the employee's immediate discharge. See id. at ¶ 11; Docket No. 17-5 at pp. 13-14.

### Second Final Warning

30. Plaintiff was out on leave of absence from the end of April of 2013 until the last week of May of 2013. Id. at ¶ 46.

31. Plaintiff was scheduled to return to work from her leave of absence on May 16, 2013, for the overnight shift, but on that same date the HR Office received via fax a medical certificate indicating that her leave had been extended until May 27, 2013. Id. at ¶ 47. Admittedly, Plaintiff did not call her supervisor, the department manager or the Manager on Duty to notify her absence. Id. at ¶ 48.

32. Pursuant to the Hotel's attendance policy, if the employee cannot arrive at work on the scheduled date and time, he/she must call the supervisor, department manager or the manager on duty to notify the absence. Id. at ¶ 10. The policy also states that absences and tardiness are considered unacceptable deviations from the work schedule. Id.

33. Upon returning to work, Plaintiff received a "Final Warning" (hereinafter, the "second final warning") based on her failure to properly notify her absence on May 16, 2013. Id. at ¶ 49. The disciplinary action was signed by Delgado and the Hotel's Overnight Manager, Diaz, after the same had been reviewed and approved by HR. Id. at ¶ 50.

34. During her deposition, Plaintiff acknowledged that the Hotel only has one attendance policy in place and that, pursuant to the same, she was required to call her supervisor. Id. at ¶¶ 52-53.

### Second Meeting with Human Resources

35. On May 31, 2013, Plaintiff met with HR Manager Gomez to complain about Delgado and, specifically, about the fact that she had received a second final warning due to a "no show-no call."[6] However, Gomez clarified that the warning was due to an "improper call out." Gomez also explained that any additional violation to the Hotel's policies could result in the termination of employment. Id. at ¶ 54.

36. During the meeting, Plaintiff expressed her belief that Delgado wanted to "fire her." However, Gomez assured her that all disciplinary actions were verified and approved by HR before the managers could present and discuss them with the employees. Id.

37. Gomez prepared a written memorandum of the meeting with Plaintiff on May 31, 2013, which Plaintiff believes to be accurate but for her omitted remarks about feeling harassed and discriminated against by Delgado. Id. at ¶ 55.

38. Nonetheless, Plaintiff never complained in writing or documented the perceived age-based harassment or discrimination by Delgado "because the work environment was already messed up and she did not want to mess it up anymore with a written discrimination complaint against Delgado." Id. at ¶ 71; see also Docket No. 25-1 at ¶ 71.

39. Plaintiff admits that other PBX Operators have been reprimanded or subject to disciplinary actions issued by Delgado for violations to the Hotel's policies, regardless of their age. See Docket No. 17-1 at ¶ 73; Docket No. 17-20.

### Ageist Comments

40. On several occasions, Delgado offered Plaintiff to take time off from work to rest after she had either reported to work while sick or had otherwise been absent for a few days. Docket No. 17-1 at ¶ 69.

41. According to Plaintiff, Delgado offered her time off because of her age, as well as her medical/physical conditions, and the fact that she had always worked the overnight shift. Id. at ¶ 65.

42. When offering Plaintiff time off, Delgado made reference to her age "maybe twice." Id. at ¶ 66. However, Plaintiff does not remember when these alleged comments were made. See Docket No. 17-3 at pp. 70-71.

43. Also on a few occasions, Delgado asked Plaintiff if she was "ok."

---

[6] It is undisputed that it was Gomez, not Delgado, who directly managed the disciplinary process resulting in Plaintiff's second final warning. Id. at ¶ 54.

Docket No. 17-1 at ¶ 65.

44. The fact that Plaintiff was not used to a supervisor caring about her health made her perceive Delgado's comments negatively. <u>Id.</u> at ¶ 70.

***EEOC Charge***

45. After receiving the second final warning, Plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") in order to "protect her job." <u>See</u> Docket No. 17-3 at pp. 209-210.

46. Plaintiff does not know whether Delgado even knew that she had filed an EEOC charge. <u>See</u> Docket No. 17-1 at ¶ 79.

47. Plaintiff cannot recall being subjected to any adverse employment action or decision after she filed her EEOC charge. <u>Id.</u> at ¶ 78.

***2013 Performance Evaluation***

48. Following her internal complaints with HR about Delgado, as well as her EEOC charge, Plaintiff received a performance evaluation for the year 2013 from Delgado, where she was ranked as a "Key Contributor." <u>See</u> Docket No. 17-21.

### III.   DISCUSSION

Plaintiff claims that the Defendant discriminated against her because of her age in violation of the ADEA and local laws. In addition, the Plaintiff asserts that she was the victim of harassment because of her age and in retaliation for opposing Defendant's unlawful employment practices.

### A. Age Discrimination in Employment Act

The ADEA makes it unlawful for an employer to "fail or refuse to hire or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." <u>Velez v. Thermo King de Puerto Rico, Inc.</u>, 585 F.3d 441, 446 (1st Cir. 2009)(quoting 29 U.S.C. § 623(a)(1)). The Supreme Court has clarified that, regardless of whether direct or circumstantial evidence is used to support an ADEA claim, and of whether a burden-shifting analysis is employed by the court, plaintiffs must "establish that age was the 'but-for' cause of the employer's adverse action." <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009). Where, as here, there is an absence of direct or "smoking gun" evidence, ADEA plaintiffs may nonetheless prove their cases using the three-stage

burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973)). See Melendez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir. 2010); Thermo King, 585 F.3d at 447 n.2.

Under the first step of the McDonnell Douglas inquiry, an ADEA plaintiff must make a *prima facie* showing that she: **(1)** was at least forty (40) years of age when the alleged discrimination took place; **(2)** was qualified for the job position or met the employer's legitimate expectations; **(3)** was actually or constructively discharged, or otherwise suffered an adverse employment action; and **(4)** her employer had a continuing need for her services. See Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008). "This prima facie showing is not especially burdensome, and once established, gives rise to a rebuttable presumption that the employer engaged in intentional age-based discrimination." Autogermana, 622 F.3d at 50 (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995).

If the plaintiff makes a *prima facie* showing of discrimination, the Court moves on to the second stage of the analysis and proceeds as follows:

> The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decisions. If the employer articulates such a reason, the McDonnell Douglas framework -with its presumptions and burdens- is no longer relevant. At this stage, the sole remaining issue is discrimination *vel non*. A plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant were not its true reasons, but were a pretext for discrimination. Ultimately, the plaintiff's burden is to prove that age was the but-for cause of the employer's adverse action.

Thermo King, 585 F.3d at 447-448 (internal quotation marks and citations omitted).

For purposes of the dispositive motion before the Court, "[t]he ultimate question on summary judgment in [an] ADEA case is whether or not the plaintiff has adduced ***minimally sufficient*** evidence to permit a reasonable factfinder to conclude that he was fired [or subjected to an adverse employment action] because of his age." Id. at 452 (emphasis added)(alteration in original)(internal quotation marks and citation omitted). "Evidence establishing a *prima facie* case, in combination with

evidence of pretext, can be sufficient to defeat summary judgment if a rational factfinder could conclude that unlawful age discrimination was the actual, but-for cause of the discrimination." Id. (citation omitted).

### 1) Plaintiff's *Prima Facie* Case

Plaintiff alleges that she suffered several adverse employment actions because of her age, to wit, a suspension, two written reprimands, and her required attendance at mandatory department meetings scheduled by Delgado. See Docket No. 25 pp. 3-5. In its motion for summary judgment, the Defendant argues that Ramirez' *prima facie* case of age discrimination fails insofar as she has not suffered any materially adverse employment action and, alternatively, that the Hotel had legitimate, non-discriminatory reasons for suspending and reprimanding her.[7] See Docket No. 18 at p. 6. It is undisputed as a matter of record that Ramirez has continuously worked at the Hotel since December of 2004, in the same PBX Operator position; she has not been terminated, demoted, transferred or evaluated negatively as a result of the events alleged in her complaint.

The First Circuit has explained that "[t]o be adverse, an action must materially change the conditions of plaintiff's employ." Gu v. Boston Police Department, 312 F.3d 6, 14 (1st Cir. 2002)(citation omitted). Typically, such actions "involve[] discrete changes...,such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012)(quoting Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010). Whether an employment action is "adverse," and therefore actionable, is gauged by an objective standard. See Blackie v. Maine, 75 F.3d 716, 725-726 (1st Cir. 1996).

Here, Plaintiff's argument regarding her required attendance at mandatory departmental meetings is unavailing for two straightforward reasons. First, in describing the effect of the employment action in

---

[7] As for the first prong of the *prima facie* case, the record shows that Ramirez was over forty (40) years old when the events alleged in the complaint took place. Although the parties never fully briefed the issue, the Court will infer that Plaintiff is able to meet the second and fourth prongs. While there are four documented occasions on record in which Ramirez was reprimanded for violating company policies, there is also a positive performance evaluation that post-dates the reprimands where Ramirez was ranked by her supervisor as a "key Contributor." See Docket No. 17-21. Finally, the fact that Ramirez continues to work at the Hotel as a PBX Operator is indicative of the Defendant's continuing need for her services.

question, Ramirez readily states that the meetings made it "very difficult for her to come to the meeting in the midday, and then stop sleeping and then get back home." See Docket No. 25-1 at ¶ 77. Such a consequence represents a trivial inconvenience at best. See King v. City of Boston, 71 Mass.App. 460, 883 N.E.2d 316, 323 (2008)(noting that a "materially adverse employment action" requires more than trivial, subjectively perceived inconveniences). Second, Ramirez admitted that she did not attend all of the scheduled monthly meeting and she was never reprimanded for doing so. Finding of Fact No. 22.

Also, the two final warnings received by Plaintiff hardly rise to the level of the material, discriminatory change required for a *prima facie* showing. Case law acknowledges that reprimands without any tangible consequences do not rise to the level of an adverse employment action. See Bhatti v. Trustees of Boston University, 659 F.3d 64, 73 (1st Cir. 2011)(holding that written reprimands that do not carry with them any tangible consequences were not materially adverse and thus not actionable); Serrano v. Donahoe, Civil No. 12-1055 (PAD)(D.P.R. Sept. 30, 2014), 2014 WL 4924434, at *8 (same)(citation omitted). Other than Plaintiff's conclusory assertions regarding the written warnings, the record before the Court lacks evidence of an ensuing serious and tangible change in the terms and conditions of her employment.

Plaintiff's claim regarding her two-day suspension falters for the same reason.[8] She does not set forth specific facts or circumstances, with some support in the record, of material changes in her employment or an economic harm or loss recoverable under the ADEA. Rather, Ramirez maintains, in a general and conclusory fashion, that the employment actions taken against her drastically affected her employment because she "believed and was certain that Delgado wanted to discharge her, and thus, [she] felt and believed that she could not even look to the side because she was going to get another warning and be discharged." See Docket No. 25 at p. 4. Ramirez further states that she "felt that she was walking on egg shells, and that she was going to get a disciplinary action and be

---

[8] Plaintiff is reminded that conclusory allegations and unsupported speculation are insufficient to defeat summary judgment. See Mendez-Laboy v. Abott Laboratories, Inc., 424 F.3d 35, 37 (1st Cir. 2005)(noting that "the party opposing summary judgment must present definite, competent evidence to rebut the motion...'")(quoting Maldonado-Denis, 23 F.3d at 581)).

discharged at any moment, and that for someone of her age, 57 years old, it was very hard to work under that pressure and under those conditions." Id. Nonetheless, the record easily shows that Ramirez has not been discharged or subject to other disciplinary actions by the Hotel. Absent a probative evidentiary proffer sufficient to show that Ramirez has suffered a taking of something of consequence by Defendant, her discrimination claim fails at the *prima facie* stage.

Notwithstanding, the Court will assume, *arguendo,* that Plaintiff has made a *prima facie* showing on the basis of the suspension "in order to move on to the real issues in the case." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010)(citing Garcia v. Bristol-Myers Squibb Co.,535 F.3d 23, 31 (1st Cir. 2008). See Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)("On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.").

### 2) Defendant's Burden

In support of its decision to suspend Ramirez, the Defendant adduces two instances of violations of the Hotel's workplace rules that led to the challenged employment decision.[9] Both of these occurred during the night shift of April 5, 2013, at approximately 3:30am, when Segarra, the manager on duty, found the Plaintiff asleep (or with her eyes close) in her work area, calling her name several times before she responded. Immediately afterwards, Segarra instructed Plaintiff to make a live wake-up call. Ramirez, however, called the wrong Hotel guest and had to apologize. After Segarra reported the incident, Ramirez was suspended for two days pending investigation of her alleged violations to Wyndham's

---

[9] The Hotel has presented evidence regarding Plaintiff's past disciplinary record, to wit, a "Coach and Counseling" from January of 2011, for sleeping at her work station. See Docket No. 17-19. The record also contains evidence regarding the Hotel's "performance management" policy, which states that "[c]orrective counseling will generally consist of progressive steps of verbal counseling and written disciplinary warnings. Serious misconduct may require more immediate or final action, including termination of employment. The Company reserves the absolute right to initiate the form of discipline it deems appropriate." Docket No. 17-5 at p. 12. In addition, the Hotel has presented evidence evincing the implementation of similar corrective and/or disciplinary measures taken as to other employees. See Docket No. 17-20.

employment policies. See Docket No. 17-18. After the investigation, Ramirez received a first final warning.

The Hotel also points to the employment rules and policies included the Handbook, which Ramirez received and is familiar with. Pursuant to Wyndham's standards of conduct, the following conduct may result in the employee's immediate discharge **(i)** sleeping or malingering during the scheduled workday, and/or **(ii)** failing to provide attentive, courteous and efficient guest service or failure to satisfactorily perform work or job assignments See Docket No. 17-5 at p. 15. Taking time off during regularly scheduled workhours without authorization from the department head is also prohibited. Id. Further, the Handbook expressly states that "[v]iolations to these and other established workplace rules may result in possible disciplinary actions, including counseling, formal warnings, suspension, probation, and immediate discharge. The specific action taken will depend on the nature of the offense, the circumstances and your previous employment record." Id. at p. 16. Similarly, the "performance management" section of the Handbook indicates that the Hotel will take corrective actions before more serious discipline becomes necessary. Id. at p. 12. Nonetheless, "[t]he Company reserves the absolute right to initiate the form of discipline it deems appropriate." Id.

Upon review of the Hotel's proffered explanation for the suspension, the Court finds that the Hotel has met its burden of "articulating a legitimate, nondiscriminatory basis for its adverse employment action[s]." Torrech-Hernandez, 519 F.3d at 48 (quoting Hoffman v. Applicators Sales & Serv., Inc., 439 F.3d 9, 17 (1st Cir.2006)(internal quotations omitted); see also Ruiz v. Posadas de San Juan Associates, 124 F.3d 243, 248 (1st Cir. 1997)("In order to rebut the presumption that arises of a prima facie case –i.e., that the employer engaged in intentional age-based discrimination- the employer need only produce enough competent evidence, taken as true, to enable a rational factfinder to conclude that there existed a nondiscriminatory reason for the challenged employment action.")(internal citations omitted). The Court thus turns to Plaintiff's evidence of pretext and age discrimination.

We then reach "'the third and final phase of burden-shifting,' at which point, 'the McDonnell Douglas framework falls by the wayside.'"

Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012)(citing Mesnick, 950 F.2d at 824)(internal quotations omitted). The Court must now determine whether the evidence as a whole, assessed in the light most favorable to the Plaintiff, is sufficient to make out a jury question as to pretext and discriminatory animus. "In order to meet this burden, [Plaintiff] must offer some *minimally sufficient* evidence, direct or indirect, both of pretext and of [defendant's] discriminatory animus." Id. (citing Mesnick, 950 F.2d at 825)(internal quotations omitted). In other words, Plaintiff must show by a preponderance of the evidence that the Hotel's proffered reason is a sham intended to mask discrimination on the basis of age.

   "Under the purview of the ADEA, pretext can be established by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions' in the employer's offered reasons for the [adverse employment action] that a 'reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" Bonefont-Igaravidez v. Int'l Shipping Corp., 659 F.3d 120, 124 (1st Cir. 2011)(quoting Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662-63 (1st Cir. 2010)). In addition, evidence of age-related comments could support an inference of pretext and discriminatory animus, particularly if the comments were made by the key decisionmaker. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000); see also Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35-36 (1st Cir. 2001) (holding that in combination with other evidence, so-called "stray remarks" may permit a jury in an employment discrimination action reasonably to determine that an employer was motivated by a discriminatory intent). The weight of such remarks, however, is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question or were made by non-decisionmakers. See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir. 1998); see also Acevedo-Parrilla, 696 F.3d at 144 ("[I]n evaluating such remarks made by a decisionmaker, this court has considered their temporal proximity and causal connection to the decision to discharge.").

To begin, the Court notes that the Plaintiff's argument of pretext and discriminatory animus is perfunctory at best.[10] <u>See Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 6 (1st Cir. 1998)(noting that "[a]t the summary judgment stage, the district court cannot accept on faith conclusory assessments by claimants that unspecified and unattributed epithets...demonstrated discriminatory intent.")(citation omitted). In essence, Ramirez claims that the disciplinary actions taken by Delgado on April and May 2013 "were taken based on false and pretextual reasons, since [she] never violated any of defendant's practices and policies...." <u>See</u> Docket No. 25 at p. 11. With respect to her suspension, Ramirez begins (and ends) with the assertion that she was "never caught sleeping in her position."[11] <u>Id.</u> Other than her say-so, Ramirez fails to put forth any evidence in support of her argument, and the Court has found none.

The First Circuit has consistently explained that in assessing pretext, the Court must focus on the perception of the decisionmaker, that is, whether the decisionmaker truly believed its stated reason to be credible. <u>See Adamson v. Walgreens Co.</u>, 750 F.3d 73, 79 (1st Cir. 2014)(citing <u>Mesnick</u>, 950 F.2d at 824); <u>Acedevo-Parrilla</u>, 696 F.3d at 140-140; <u>Gray v. New England Tel. & Tel. Co.</u>, 792 F.2d 251, 256 (1st Cir. 1986)(explaining that at the pretext stage, [the court's focus] must be "on the perception of the decisionmaker, <i>i.e.,</i> whether [the employer] perceived the plaintiff as violating...company policies and whether this perception was credible and reasonable"). Further, "[a]n employer's disciplinary decision must be evaluated in real time; it cannot be evaluated in hindsight." <u>Wilson v. Moulison North Corp.</u>, 639 F.3d 1, 8 (1st Cir. 2001)(citing <u>Riggs v. AirTran Airways, Inc.</u>, 497 F.3d 1108,

---

[10] The Court quotes the following paragraph from Plaintiff's pretext argument as an example:

> In the case at bar...the two disciplinary actions taken by Delgado against Ramirez on April and may [sic] 2013, including the suspension of employment, were due to false and pretextual reasons, since plaintiff was never caught sleeping in her position as it was explained in paragraphs 46-56, 61 of plaintiff's responses (PRDSUF), and Ramirez, at all times, fully comply [sic] with her obligations of notifying to the human resources office the medical certificate issued by her treating physician in order to extend her medical leave, which was the procedure always followed while Ramirez had been employed with the defendant at the time of requesting leave of absence.

<u>Id.</u> at p. 11.

[11] The same bare, unsupported assertion can be found scattered throughout Plaintiff's opposition. <u>See id.</u> at pp. 4 and 7.

1119 (10th Cir. 2007). While Plaintiff vehemently denies that she was ever asleep, there is no dispute as to the fact that her two-day suspension was triggered by, and based on the information provided by Segarra, whose statements Plaintiff decided not to contest. Moreover, Ramirez has failed to set forth evidence that Delgado, the purported decisionmaker with respect to Ramirez' employment, did not actually believe the stated reasons, her reported violations to the company's standards of conduct, to be real.[12] See Bonefont-Igaravidez, 659 F.3d at 126 (stating that at the pretext stage, "impugn[ing] the veracity of a tangential aspect of [defendant's] story is not enough").

There is also a matter of certain "ageist" comments made by Delgado that, according to the Plaintiff, are evidence of discriminatory animus.[13] The evidence on record reveals that in various conversations between Delgado and Ramirez, Delgado offered Plaintiff time off from work to rest because of -or making reference to- her age, her physical or medical condition, and the fact that she covered the night shift. Finding of Fact No. 41 and 42. These conversations took place either after Ramirez had been absent for a few days, or because she was reporting to work while sick. Finding of Fact No. 40. Plaintiff indicates that these age-related remarks were made "maybe twice," but she cannot remember when they took place. Finding of Fact No. 42. The Court, on its own, searched the record for indications of temporal proximity or causal connection, if any, between the age-related comments and the challenged employment decisions, but found none. It follows that, on these facts, Delgado's comments are "stray workplace remarks," insufficient to establish discriminatory animus. See Dunn v. Trustees of Boston University, 761

---

[12] Plaintiff's position, that the Court infer pretext and discriminatory animus on the basis of her denial of the alleged misconduct, would ultimately entail second-guessing the Defendant's decision to suspend her pending investigation of an incident reported by Hotel management. See Mesnick, 950 F.2d at 825 ("Courts may not sit as super personnel departments, assessing the merits -or even the rationality- of employers' nondiscriminatory business decisions); see also Rivera-Aponte v. Rest. Metropol #3, Inc., 338 F.3d 9, 11-12 (1st Cir. 2003)("Whether a termination decision was wise or done in haste is irrelevant, so long as the decision was not made with discriminatory animus."). Plaintiff has not elucidated specific and properly supported facts showing that the falsity of Segarra's report was communicated to Delgado prior to the suspension or that Delgado knew Segarra's statements to be false.

[13] Her argument is reduced to the following sentence: "In addition, the different comments made by Delgado, described at paragraph 65 of [the Defendant's SUF] also demonstrate the discriminatory animus from Delgado against Ramirez because of her age." Docket No. 25 at p. 5.

F.3d 63, 75 (1st Cir. 2014)(explaining that evidence of age-related comments does not support an inference of pretext and discriminatory animus "where the plaintiff 'fail[s] to adduce sufficient evidence that the remarks were both temporally *and* casually related to [the defendant's] [adverse employment decision]")(citation omitted); Vesprini v. Shaw Contract Flooring Servs., Inc., 315 F.3d 37, 42-43 (1st Cir. 2002)(noting that lack of temporal proximity between the age-related comments and the ensuing disciplinary action by defendant "severely undermines the reasonableness of any inference" of a causal relationship); see also Rivera-Aponte, 338 F.3d at 12 (finding that comments such as "imbéciles" or "corpses" were stray workplace remarks insufficient to establish pretext or discriminatory animus, where the plaintiff failed to evince a direct connection between the remarks and the challenged employment action).

In light of the foregoing, after assessing all of the evidence on record in the light most favorable to Ramirez, the Court finds that Ramirez has not satisfied the minimally sufficient standard required to prove that age discrimination was the *true and but-for reason* behind her suspension. Accordingly, the Defendant's motion for summary judgment with respect to Plaintiff's age discrimination claim under the ADEA is hereby **GRANTED.**

### B. Hostile Work Environment Claim

Ramirez also pleads a hostile work environment claim under the ADEA. See Docket No. 25 at p. 9. In its motion for summary judgment, the Hotel argues that the employment actions taken by Delgado against Ramirez, viewed individually or collectively, were not severe or pervasive enough to create an abusive work environment on the basis of age, and that there is no evidence on record showing Delgado's actions affected Plaintiff's working conditions. See Docket No. 18 at pp. 9-12.

A hostile work environment claim is considered an adverse employment action but is analyzed under a different rubric.[14] See Lugo v. Avon Products, Inc., 777 F.Supp.2d 275, 293 (D.P.R. 2011)(citing Collazo v. Nicholson, 535 F.3d 41, 44 (1st Cir. 2008)(recognizing hostile work

---

[14] In support of her hostile work environment claim, Ramirez relies on the same evidence put forth in regards to her age discrimination claim, to wit, the two-day suspension, the two final warnings, her requested attendance at departmental meetings, and the alleged ageist remarks by Delgado. See Docket No. 25 at pp. 3-5.

environment claims under the ADEA)). To prove a hostile work environment claim, a plaintiff must show that:

> (1) she belongs to the protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment; (5) the complained-of conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and that the plaintiff indeed perceived it to be so; and (6) some basis for employer liability has been established.

See Lugo, 777 F.Supp.2d at 293 (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001).

To determine whether the challenged conduct is sufficiently severe or pervasive to create a hostile work environment, a court must examine the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006)(citation and quotations omitted); Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18-19 (1st Cir. 2002). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not create a hostile work environment." Lugo, 777 F.Supp.2d at 293 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).

In her opposition to summary judgment, Ramirez references her age discrimination claim when addressing her hostile work environment claim, see Docket No. 25 at pp. 8-11, pointing to her discussion of the adverse employment actions allegedly motivated by her age as instances of unwelcomed harassment. See id. pp. 3-5. Ramirez also contends that Defendant's actions and omissions "were severe, pervasive, and created an abusive working environment"; which negatively affected her mental and emotional condition, as well as the conditions of her employment, because: **(i)** HR Manager Gomez warned her that another warning would led to her termination from employment, thus **(ii)** she believed and was certain that Delgado wanted to discharge her, and **(iii)** she felt that she could not even look to the side for she was going to get a warning and be discharged. Id. at p. 10. Ramirez also avers that any reasonable person

would find the Defendant's actions, omissions, and remarks against her were abusive, offensive, harassing and discriminatory. Id. As for the basis of her employer's liability, Ramirez asserts that the Hotel failed to take corrective action notwithstanding her internal complaints. Id.

The events chronicled by Ramirez fail to demonstrate that her contact with Delgado, her supervisor, was egregious, or so egregious as to evince a hostile work environment. See Ponte v. Steelcase, Inc., 741 F.3d 310, 320 (1st Cir. 2014)(citation omitted). First, it is undisputed that, as an overnight operator, Ramirez works under the supervision of the Hotel's overnight manager, Diaz. Second, because of their different work schedules, Delgado and Plaintiff rarely see each other and communicate mostly via e-mail or phone. Third, even if we construe the disciplinary actions on record as adverse employment actions against Plaintiff, it is uncontested that **(i)** the suspension and first final warning were based on the information provided by fellow Hotel manager, Segarra; **(ii)** the Hotel's HR Manager directly managed the disciplinary process resulting in the second warning; and **(iii)** all disciplinary actions were verified and approved by HR. Plaintiff may have felt uncomfortable with Delgado, but "discomfort is not the test." Ponte, 741 F.3d at 320. Employees are expected to have thick skins. Rosario v. Dept. of the Army, 607 F.3d 241, 247 (1st Cir. 2010); Suarez, 229 F.3d at 54. Even if considered "rough," Delgado's actions do not support a finding of hostile work environment. See Arce v. Potter, 818 F. Supp.2d 402, 412-413 (D.P.R. 2011).

At the end, the instances proffered by Plaintiff in support of her hostile work environment claim do not encompass or resulted in material changes in the terms and conditions of her employment. The fact is that Plaintiff was never discharged; she continues to be employed by the Hotel. That Ramirez may have been advised of a potential termination if she did not improve her performance is unavailing. In the end, Plaintiff's assertions pertaining to her hostile work environment claim merely reflect her "subjective speculation and suspicion" that she was treated in an unfair way. See Mariani-Colón, 511 F.3d at 222. Proof of more than a plaintiff's subjective belief that she was the target of unlawfulness is required to prove discrimination. Id. After a careful review of the factual findings and the evidence on record, considered in

the light most favorable to Plaintiff, the Court finds that the few employment actions or incidents on record not rise to the level of severity or pervasiveness required under the ADEA. Accordingly, the Defendant's motion for summary judgment with respect to Plaintiff's hostile work environment claim is **GRANTED**.[15]

The Defendant also argues that the Plaintiff has "failed to state a claim upon which relief may be granted" because the remedy Plaintiff seeks, compensatory damages for the alleged mental anguish, pain, and suffering she endured as a result of being required to work in a hostile work environment based on her age, is not available to her under the statute. See Docket No. 18 at pp. 4-5. The Court agrees. Although hostile work environment claims are actionable under the ADEA, see Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24 (1st Cir. 2001), it is well-established that the statute does not allow compensatory damages for pain and suffering. See Collazo, 535 F.3d at 45 (1st Cir. 2008). "The remedy provisions of the ADEA allow awards for only those pecuniary benefits connected to the job relation, including unpaid wages or overtime compensation." Id. at 44-45 (internal quotations and citations omitted); see also 29 U.S.C. § 626(b). On these grounds, too, Plaintiff's hostile work environment claim must be dismissed.

### C. Retaliation Claim

Ramirez also makes a retaliation claim under the ADEA alleging that she was suspended and reprimanded for complaining about age discrimination and harassment. See Docket No. 1 at ¶¶ 24-28. The Hotel seeks dismissal of this claim arguing that (1) there is no causal connection between Ramirez' protected activity, if any, and the disciplinary actions issued by Delgado; (2) said disciplinary actions do not constitute adverse employment actions; (3) and alternatively, that the employment actions in question were based on legitimate, non-retaliatory reasons. See Docket No. 18 at pp. 5-6.

In addition to prohibiting discrimination on the basis of age, the ADEA also protects individuals who invoke the statute's protections. See Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir. 2005)(citing 29 U.S.C. § 623(d))("It shall be unlawful

---

[15] As such, the Court need not decide the applicability of the Eller/Faragher defense raised by the Hotel. See Docket No. 18 at p. 13.

for an employer to discriminate against any of his employees...because such individual...has opposed any practice made unlawful by this section, or...made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."). Absent direct evidence of retaliation, the plaintiff may establish a *prima facie* case that closely tracks the McDonnell Douglas framework by showing that she: **(1)** engaged in ADEA-protected conduct; **(2)** was thereafter subjected to an adverse employment action, and **(3)** a causal connection existed between the protected conduct and the adverse action. See *id.* (citing Mesnick, 950 F.2d at 827).

If the plaintiff satisfies the elements of the *prima facie* showing of retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. See Mesnick, 950 F.2d at 827. However, having the ultimate burden of persuasion, the plaintiff must show "that the employer's proffered reason is a pretext masking retaliation for the employee's opposition to a practice called into doubt by the ADEA." Id. (citation omitted). The First Circuit has explained that "[w]hatever the sources of [her] proof, a plaintiff, in order to survive summary judgment as a matter of law, must present evidence from which a reasonable jury could infer that the employer retaliated against [her] for engaging in ADEA-protected activity." Id. at 828 (recognizing various sources of circumstantial evidence, including evidence of differential treatment in the workplace, temporal proximity, and comments made by the employer which suggest a retaliatory animus)(citing Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990); Williams v. Cerberonics, Inc., 871 F.2d 452, 458 (4th Cir.1989)).

Ramirez is unable to establish a *prima facie* case of retaliation because, even if the disciplinary actions on record constituted adverse employment actions, Ramirez has failed to demonstrate that she engaged in ADEA-protected conduct prior to her suspension and written warnings. The undisputed facts show that during Ramirez' meeting with the Hotel's HR Manager on April 4, 2013, Ramirez protested about receiving work-related calls from Delgado and the fact that her request for vacation days in May of 2013 had not been immediately approved. Yet, on that occasion, Plaintiff *did not* oppose any practice made unlawful by the ADEA at that

time.[16] See 29 U.S.C. § 623(d). Second, Ramirez' suspension cannot have been motivated by retaliation for her first internal complaint because she was suspended before her supervisor Delgado, who signed the disciplinary action, learned about the complaint.

Whether her complaint on May 31, 2013, was premised on any perceived discriminatory and/or harassing conduct is dubious. Ramirez claims that during the meeting with Gomez on May 31, 2013, she specifically complained about age-based discrimination and harassment on Delgado's part. See Docket No. 25 at p. 6. This would certainly satisfy the ADEA-protected activity prong. However, because Ramirez did not suffer any adverse employment action after her second informal complaint, her retaliation claim necessarily fails. Likewise, Ramirez has not evinced that she suffered any adverse employment action after her EEOC charge. Indeed, Plaintiff is unaware if Delgado knew of her EEOC charge or if she was subject to adverse employment decisions after the fact. Finding of Fact 46 and 47. In order to defeat summary judgment with respect to her retaliation claim, "a plaintiff must point to some evidence of retaliation by a pertinent decision maker." Sanchez-Rodriguez v. AT&T Mobility P.R., Inc., 673 F.3d 1, 15 (1st Cir. 2012). Insofar as Plaintiff has failed to provide a scintilla of proof in support of her retaliation case, the Court **GRANTS** Defendant's request that Plaintiff's retaliation claim under the ADEA be dismissed.

### D. Supplemental State Law Claims

The remainder of Plaintiff's claims are grounded on Puerto Rico law. The Hotel has requested the dismissal of these claims. See Docket No. 18 at p. 18. Since the federal claims under the ADEA have been dismissed, and no other grounds for jurisdiction exists, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)(explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); United Mine Workers v. Gibbs, 383 U.S.

---

[16] Although Plaintiff is not required to demonstrate at the *prima facie* stage that Defendant's underlying conduct actually constituted an ADEA violation, Plaintiff has not evinced that she had "a reasonable, good-faith belief that a violation occurred; that [s]he acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it." See Mesnick, 950 F.2d at 827.

715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)(stating "if the federal claims are dismissed before trial,...the state law claims should be dismissed as well."). Accordingly, Plaintiff's claims brought pursuant to Commonwealth law are hereby **DISMISSED WITHOUT PREJUDICE**.

## IV.   CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendant's motion for summary judgment (Docket No. 17). Accordingly, Plaintiff's claims for discrimination, hostile work environment and retaliation under the ADEA are hereby **DISMISSED WITH PREJUDICE**. The Plaintiff's claims brought pursuant to Commonwealth law are hereby **DISMISSED WITHOUT PREJUDICE**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, April 26, 2016.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**